UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 16-11

ROBERT RICKS                                SECTION: "J"(2)

## ORDER & REASONS

Before the Court is Defendant Robert Ricks' *Motion to Suppress* **(R. Doc. 42)** and an opposition thereto filed by the Government **(R. Doc. 46)**. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

On February 5, 2015, an anonymous caller advised the New Orleans Crimestoppers tip line of suspected drug trafficking activity occurring at 1201 Belleville Street in New Orleans, Louisiana. (R. Doc. 42-2 at 34.) Specifically, the caller said that there was "traffic in and out of the residence with the individuals only staying [ten] minutes at a time," and that there was heavy traffic all day. *Id.* at 35. The caller then described the alleged suspect as a tall, black male named "Robbie" residing at 1201 Belleville Street. *Id.* at 34. The caller also informed Crimestoppers that "Robbie" drove a red Dodge Challenger with a Louisiana license plate. *Id.*

Acting on this information, on February 15, 2015, the New Orleans Police Department (NOPD) conducted surveillance operations on the 1201 Belleville Street residence. Detective Chantell Long was the officer who conducted the surveillance. *Id.* at 7. Detective Long indicated that she observed a Ford F-150 enter the 1200 block of Belleville, a black male then exited the front passenger seat and walked to the front porch of 1201 Belleville Street. *Id.* At the front porch the male was met by another black male, Mr. Ricks,[1] and the two conducted a hand-to-hand transaction. *Id.* The male from the Ford F-150 then proceeded back to the vehicle. The vehicle then proceeded to the 1300 block of Teche Street and was stopped by Detectives Rodney Brown and Damon Banks. *Id.* During the traffic stop the detectives recovered a clear plastic bag containing brown powder, a silver spook with brown residue, and a syringe containing residue. *Id.* However, the two individuals did not reveal who gave them the brown powder. The two individuals from the F-150 were placed under arrest and charged accordingly.[2] *Id.*

On the same day, Detective Long relayed to detectives that she observed a black female walk to the 1201 Belleville Street residence. The female got into the passenger seat of a red Dodge

---

[1] While the affidavit does not explicitly state that this was Mr. Ricks it may be inferred from the affidavit that Mr. Ricks conducted the hand-to-hand transaction. Further, Defendant does not argue that he did not conduct a hand-to-hand transaction on the porch of the 1201 Belleville Street residence, nor does he argue that the person identified in the affidavit was not him. See (R. Doc. 46.)

[2] Evidence within the record makes clear that the brown powder tested positive for heroin at the scene of the arrest. (R. Doc. 46-1 at 3.)

Challenger with a Louisiana temporary tag. Mr. Ricks proceeded to get into the driver's seat of the red Dodge Challenger. *Id.* After several minutes, the female exited the vehicle clutching an unknown object in her left hand. *Id.* The female walked a few blocks from the 1201 Belleville residence and was stopped by Detectives Alfred Harris and Chadwick Taylor. *Id.* The detectives lawfully recovered a single Xanax pill, without a prescription bottle, from the left jacket pocket of the female. *Id.* She was placed under arrest and charged accordingly, but did not reveal who had given her the Xanax pill. *See id.*

Detective Long also observed Mr. Ricks get into the driver's side of a maroon Jeep Cherokee with a Louisiana license plate, exit the vehicle with an unknown object in his hand, and conduct a hand-to-hand transaction with an unknown black male. *Id.* at 8. The person with whom Mr. Ricks conducted the transaction was not stopped or arrested by the NOPD, however Detective Long saw Mr. Ricks repeat the same act several more times that day.

Based on the above information, the NOPD officers applied for and obtained a search warrant for the 1201 Belleville Street residence, the red Dodge Challenger, and the maroon Jeep Cherokee. On February 19, 2015, the NOPD executed the search warrant and seized heroin, crack cocaine, powder cocaine, marijuana, a handgun, a digital scale, drug paraphernalia, "narcotics packing material," four cell phones, and cash from the residence. (R. Doc.

42-1, at 2-3.) Mr. Ricks was arrested and charged in state court with narcotics and weapons violations. *Id.* On January 21, 2016, a federal grand jury returned an indictment against Mr. Ricks, and his state case was nolle prossed. *Id.* at 4.

On October 19, 2016, Mr. Ricks filed the present motion to suppress all of the evidence found in during the search of the 1201 Belleville residence, including any information discovered during the subsequent search of the cell phones.[3] In short, the Government argues that the search warrant was supported by probable cause and that the *Leon* good faith exception applies; thus, the evidence should not be suppressed. (R. Doc. 46.) On November 17, 2016 the Court held oral argument on Defendant's *Motion to Suppress*, which is now before the Court.

## PARTIES' ARGUMENTS

### 1.   Defendant's Arguments

Defendant Robert Ricks moves to suppress evidence that was obtained by the execution of the search warrant, because he argues that the warrant's supporting affidavit did not contain probable cause to search inside of the home. (R. Doc. 42.) Defendant argues that "[n]owhere in the warrant application does the affiant claim that Mr. Ricks came out of 1201 Belleville, entered 1201

---

[3] Search warrants were obtained for the search of the four cell phones recovered at 1201 Belleville. Mr. Ricks argues that because the search of the home was unconstitutional, the subsequent search of the cell phones, and any information discovered therein, is fruit of an unlawful search and must be suppressed.

4

Belleville, or obtained anything from inside of 1201 Belleville."
(R. Doc. 42-1 at 3.) Consequently, Defendant argues that there is
not a nexus between the suspected criminal activity and the
interior of the 1201 Belleville Street residence. *Id.* Defendant
further argues that the search warrants for the Dodge Challenger
and the Jeep Cherokee were not accompanied by an affidavit, and
therefore, the *Leon* good faith exception cannot apply. *Id.* at 14.[4]
Finally, Defendant argues that the cell phones, and their contents,
seized during the search of the 1201 Belleville residence must
also be suppressed as fruits of an illegal search. *Id.* at 14-15.

### 2.   Government's Arguments

The Government argues that the *Leon* good faith exception
applies in this case. (R. Doc. 46 at 8.) Specifically, the
Government argues that even if the affidavit which was provided in
support of the search warrant failed to establish probable cause
to search the 1201 Belleville residence, the affidavit was not so
deficient that it was unreasonable for the officers to rely on it.
*Id.* at 13. Further, the Government asserts that any omission of
fact from the affidavit was not made intentionally or with reckless
disregard for the truth. *Id.* at 9. Finally, the Government argues
that the affidavit set forth probable cause to believe there was

---

[4] Defendant notes that "[i]t does not appear from the police reports that any
evidence was seized from the Jeep Cherokee or the Dodge Challenger. But if any
evidence was obtained from those vehicles, it, too, must be suppressed as
unlawfully obtained." (R. Doc. 42-1 at 14.)

a fair probability that evidence of drug trafficking would be found inside the 1201 Belleville Street residence. *Id.* at 13, 17. Accordingly, the Government argues that the Court should deny Defendant's *Motion to Suppress*.

## LEGAL STANDARD

In a motion to suppress, the defendant bears the burden of making specific factual allegations of illegality, producing evidence, and persuading the court that evidence should be suppressed. *United States v. John Rockwell*, No. 07-128, 2007 WL 2122432, at *1 (E.D. La. July 19, 2007) (citing *United States v. Evans*, 572 F.2d 455, 486 (5th Cir. 1978)). The Fifth Circuit utilizes a two-step process to evaluate a defendant's motion to suppress when a search warrant is involved. First, the court must decide whether the *Leon* good faith exception to the exclusionary rule applies. *United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) (citing *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)). The *Leon* good faith exception provides that evidence is admissible when it is obtained by law enforcement officials acting in objectively reasonable good faith reliance upon a search warrant, even if the affidavit on which the warrant was based was insufficient to establish probable cause. *United States v. Leon*, 468 U.S. 897, 922 -23 (1984); *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). "'[A] warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has

6

'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (citing *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)).

The court's analysis ends if the good faith exception applies. *Moore*, 805 F.3d at 593. If the good faith exception does not apply, then the court proceeds to the second step and determines "whether the affidavit established probable cause that the evidence to be seized would be found in the place to be searched, justifying the issuance of the warrant." *Id.* (citing *United States v. Aguirre*, 664 F.3d 606, 613-13 (5th Cir. 2011); *see also United States v. Froman*, 355 F.3d 882, 888 (5th Cir. 2004). "Probable cause may be established through 'direct observation' or 'normal inferences as to where the articles sought would be located'" *Moore*, 805 F.3d at 593 (citing *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)).

## DISCUSSION

"The good faith inquiry is confined to the objectively ascertainable question [of] whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *Leon*, 468 U.S. at 922 n.23) (internal quotations omitted). "The court may examine all of the circumstances surrounding the issuance of the warrant." *Id.* (internal quotations and citation omitted). "'[A] warrant issued by a magistrate normally suffices to establish' that a law

enforcement officer has 'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (citing *Ross*, 456 U.S. at 823 n.32). Thus, "[w]hen a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)) (citations omitted). A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id.* There are four exceptions to the good-faith doctrine:

> (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth;
> (2) Where the issuing magistrate/judge wholly abandoned his or her judicial role;
> (3) Where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
> (4) Where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*United States v. Preston*, No. 15-30351, 2016 WL 4245450, at *5 (5th Cir. Aug. 10, 2016) (citing *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992)); *United States v. Rojas-Alvarez*, 451 F.3d 320, 330 (5th Cir. 2006).

## I.   The Search of the 1201 Belleville Street Residence

Defendant argues that the good faith exception does not apply to the search of the 1201 Belleville street residence for two

8

reasons. First, Defendant argues the warrant was based on an affidavit so lacking in indicia of probable cause that it was unreasonable for the officers to rely on it. *See* (R. Doc. 42-1 at 10.) Specifically, Defendant argues that there was not a sufficient nexus between the Defendant's activity on the porch of the residence and the search of the interior of the home. Second, Defendant argues that the magistrate relied on an affidavit from which the officers deliberately or recklessly omitted material information. *Id.* at 11. The Court shall address the Defendant's arguments in turn.

**1.  Whether the Affidavit is so Lacking in Indicia of Probable Cause as to Render Official Belief in its Existence Unreasonable**

Defendant first argues that the good faith exception does not apply, because "the affidavit is entirely devoid of any facts showing probable cause to search 1201 Belleville." *Id.* Defendant argues that the affidavit only alleges that conduct occurred on the porch of 1201 Belleville and does not provide that Mr. Ricks ever went into or came out of the house. *Id.* at 12. Accordingly, Defendant argues that because there is not a "nexus between the house to be searched and the evidence sought," the officers who conducted the search pursuant to the search warrant could not in good faith have relied on the warrant which permitted the search of the interior of the 1201 Belleville residence. *Id.*

The Fifth Circuit has consistently held that facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence sought. *Freeman*, 685 F.2d at 949 (citing cases). Therefore, to determine whether the affidavit has sufficient indicia of probable cause to search Mr. Ricks' house, the Court must determine if the affidavit established a nexus between the house to be searched and the evidence sought, or whether the affidavit was merely "bare-bones," containing wholly conclusory statements. *See United States v. Nguyen*, 172 F. App'x 558, 561 (5th Cir. 2006); *Satterwhite*, 980 F.2d at 321. The nexus between the activity and the home may be established either through direct observation or through normal inferences as to where the articles sought would be located. *Id.; see also United States v. Gallegos*, 239 F. App'x 890, 895-96 (5th Cir. 2007) (citing *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir. 1996); *United States v. Pace*, 955 F.2d 270, 277 (5th Cir. 1992)). However, "[t]he affidavit need not contain information providing certainty that the objects sought will be found as a result of the search." *Freeman*, 685 F.2d at 949 (quoting *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977). The facts in the affidavit need only persuade a man of reasonable caution to believe that the articles sought are located in the place to be searched. Id. The Fifth Circuit has noted that "few places are more convenient than one's residence for use in planning criminal activities and hiding

10

fruits of a crime." *Payne*, 341 F.3d 393, 401 (5th Cir. 2003)

(quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir.

1981)).

The affidavit executed by Detective Alfred Harris provides:

> On Sunday, February 15, 2015 Detectives assigned to the Fourth District General Assignment Unit investigated a crime stoppers tip in reference to narcotic distribution. They conducted a Code 5 (Narcotic Surveillance) of a residence located at 1201 Belleville Street. During the course of that surveillance Detective Chantell Long who was attired in plain clothes and occupied a nontraditional unmarked police unit had a clear and unobstructed view of the 1200 block of Belleville Street. Detective Long indicated that she observed a gray Ford F-150 enter the block, at which time an unknown black male exited the front passenger seat of the vehicle. He then walked to [the] front porch where he was met by another black male where they proceeded to conduct a hand to hand transaction. Upon completing the transaction the black male retuned to the pick-up truck, where the driver of the truck proceeded to drive to the 1300 block of teche street.
>
> As the vehicle continued on Teche Street, Detectives Rodney Brown and Damon Banks conducted a traffic stop. During that investigation the detectives recovered the following: a clear plastic baggie containing brown powder, a silver spoon with brown residue, and a [syringe] containing residue. Both occupants of the vehicle were placed under arrest and charged accordingly.
>
> On the previously mentioned date Detective Long relayed that she observed a black female walk to the 1201 Belleville Street. She then proceeded to enter the passenger seat of a red Dodge Challenger bearing Louisiana temporary tag #16586602 as the black male who was observed completing the previously mentioned transaction entered the driver's seat of the vehicle. After several minutes, the black female exited the vehicle and proceeded to walk eastbound on Dearmas street clutching an unknown object in her left hand. Upon obtaining the description and information relayed

by Detective long, Detectives Alfred Harris and Chadwick Taylor conducted an investigatory stop of the black female near the intersection of Dearmas Street and Nunez Street. During the course of the investigation the detectives recovered a single Xanax pill (without a prescription bottle) from the front left jacket pocket of the black female. She was placed under arrest and charged accordingly.

Detective Long conducted further surveillance and observed the subject identified as Robert Ricks b/m [redacted in original], get into the driver's side of a maroon [sic] colored Jeep Cherokee bearing Louisiana license plate #YTZ474. He then exited the vehicle with an unknown object in his hand. Ricks conducted a hand to hand transaction with an unknown black male. Detective Long observed Ricks repeat the same act as described above several more times. Due to the aforementioned, it is believed that Robert Ricks is selling narcotics and said narcotics may be stored in the residence located at 1201 Belleville Street, the red Chevy Charger, and the maroon Jeep Cherokee. It is therefore requested that a search for illegal narcotics and evidence thereof, be granted for the premises, curtilage, and vehicles listed above.

(R. Doc. 42-2 at 7.) The Court finds that this affidavit does not consist of "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321-22. Rather, the affidavit details the Crimestoppers tip which referenced narcotic distribution, Detective Harris explains the extensive surveillance conducted on the home, the hand-to-hand transactions performed by Mr. Ricks on the porch of the home, the subsequent arrests of those with whom Mr. Ricks conducted hand-to-hand transactions, and the discovery of narcotics on those persons arrested. Courts have found that hand-to-hand transactions occurring outside the home provide

12

a sufficient nexus to search inside the home. *See United States v. Chew*, No. 92-7408, 1993 WL 309932, at *2 (5th Cir. 1993) ("Where the suspect's home is in reasonable proximity to the point of sale, the police reasonably may infer that evidence is likely to be found in his home."); *United States v. Barnes*, 492 F.3d 33, 37 (1st Cir. 2007) (citing cases) ("This court has repeatedly found, however, that when a defendant sells drugs outside his home, it is reasonable to conclude that there is evidence of his drug dealing activity in the home, particularly when the defendant is observed leaving the home immediately prior to selling drugs."); *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998) (affidavit supported search inside home despite incidents referred to in the affidavit taking place on the premises rather than inside the home); *see also Payne*, 341 F.3d at 401 ("[F]ew places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime."). Thus, when Mr. Ricks conducted hand-to-hand transactions on the porch of the 1201 Belleville residence, this created a sufficient nexus to search the interior of the home. *See Chew*, 1 F.3d 1238 (5th Cir. 1993). Based on the four corners of the affidavit alone, the Court finds that it was not unreasonable for the officers to rely on the search warrant, and the affidavit created a sufficient nexus to the interior of the 1201 Belleville Street residence.

Further, in determining whether the *Leon* good faith exception applies, the Court may consider not only the four corners of the affidavit, but also "the circumstances surrounding issuance of the warrant." *Payne*, 341 F.3d at 402. Particularly where, as here, the warrant was issued by a state magistrate "the federal 'four corners rule' requiring that either the affidavit or recorded oral testimony alone establish probable cause does not apply." *See United States v. Triplett*, 684 F.3d 500, 506 n.3 (5th Cir. 2012) (finding that "four corners rule" did not apply because a state judge issued the warrant). Further, other circuit courts have held that when determining whether the *Leon* good-faith exception applies, the Court may consider facts outside the affidavit. *See United States v. Martin*, 297 F.3d 1308, 1318 (11th Cir. 2002) ("[W]e find that we can look beyond the four corners of the affidavit and search warrant to determine whether [the officer] reasonably relied upon the warrant."); *United States v. Procopio*, 88 F.3d 21, 28-29 (1st Cir. 1996) (noting that information known to the police, but not included in the warrant, supported application of the Leon good faith exception to the exclusionary rule); *United States v. Owens*, 848 F.2d 462, 466 (4th Cir. 1988) (citing *Maryland v. Garrison*, 480 U.S. 79, 85 (1987)) ("The officers were justified in using common sense and reliable information known to them outside the four corners of the warrant and affidavit to assist in determining the place actually

authorized by the warrant to be searched. They were not prohibited from making a good faith interpretation of the warrant 'in light of the information available to them at the time they acted.").

Here, while there was no statement in the affidavit that Mr. Ricks lived at 1201 Belleville Street, Detective Harris clearly knew of the Crimestoppers tip which explicitly stated that Mr. Ricks' home address was 1201 Belleville Street, and that Mr. Ricks was possibly engaged in drug trafficking from that residence. (R. Doc. 42-2 at 34.) Further, it appears that Detective Long observed Mr. Ricks enter and exit the 1201 Belleville Street residence after conducting a hand-to-hand transaction on the front porch. (R. Doc. 46-1, at 3-4.) Specifically, the Government attached a police report detailing the surveillance of the 1201 Belleville Street residence. *Id.* The police report provides that Mr. Ricks exited the 1201 Belleville Street residence, conducted a hand-to-hand transaction, and went back into the residence. *Id.* at 3. The Fifth Circuit has held there is a sufficient nexus to search a home where the officer observes the suspect leaving a home before, or entering a home after, a suspected drug transaction. *See Aguirre*, 664 F.3d at 614 (affidavit provided nexus to suspect's home where suspect was arrested for carrying drugs in his car after leaving residence). Accordingly, suppressing evidence in this case would not further the purposes of the exclusionary rule, which aims to prevent unreasonable searches. Thus, based on the four corners of

the affidavit, and the information not included therein, the Court concludes that it was reasonable for the officers to rely on the warrant and infer that narcotics may be located inside the 1201 Belleville Street residence.

2.     **Whether the Magistrate was Misled by Information in an Affidavit that the Affiant Knew was False or Would Have Known Except for Reckless Disregard of the Truth**

Second, Defendant argues that the good faith exception does not apply because "the affidavit fails to disclose the contradictions between the anonymous Crimestoppers' tip and what was actually observed at 1201 Belleville Street. . . ." (R. Doc. 42-1 at 12.) Specifically, Defendant argues that the Crimestoppers "tip described a white, one-story house, from which a tall black man with no known tattoos was selling drugs, whereas the house at 1201 Belleville is a blue house with a second story above the garage, and Mr. Ricks is 5'7" and has tattoos visible on his neck." *Id.* Defendant also argues that the affidavit fails to disclose that when the woman in the Dodge Challenger was arrested, she did not reveal that Mr. Ricks sold her the narcotics that were found on her jacket. *Id.* at 12-13. Additionally, Defendant argues that the occupants who were arrested from the Ford F-150 did not identify Mr. Ricks as the source of the brown powder when they were arrested.  *Id.* at 13.

16

The *Leon* good faith exception does not apply if a search warrant affidavit contains a false statement that was made intentionally or with reckless disregard for the truth. *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). The initial burden is on the defendant to prove that false information was given intentionally or with reckless disregard for the truth. *Id.* (citing *United States v. Wake*, 948 F.2d 1422, 1428-29 (5th Cir. 1991)). "If the defendant fails to meet his burden, or if the affidavit would have sufficiently provided probable cause without the false information, the warrant did not violate the Fourth Amendment and the evidence should not have been excluded." *Id.* *Franks* has been extended to cover omissions of fact as well as affirmative misstatements of fact. *United States v. Barnes*, 126 F. Supp. 3d 735, 742 (E.D. La. 2015) (citing *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980)). In order to prevail, a defendant must demonstrate "(1) the omission was knowingly and intentionally made or was made in reckless disregard for the truth and (2) the inclusion of the omitted information would render the affidavit insufficient to support a finding of probable cause." *Id.* (citing *United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991)).

The Government argues that any omission from the affidavit was immaterial to the probable cause determination, "because none

of [the omitted information] undermine[s] the likelihood of evidence of drug trafficking being found at 1201 Belleville." (R. Doc. 46 at 11.) The Government argues that although the Crimestoppers tip provided the wrong color of the house, the tip specifically mentioned Mr. Ricks' address, 1201 Belleville Street. *Id.* at 12. The Government also argues that the tipster identified the suspected drug dealer as "Robbie" and Robert Ricks' nickname is "Ra-B." *Id.* Further, The Government argues that the Crimestoppers tip mentioned a new model, red Dodge Challenger, which Mr. Ricks used to conduct a suspected drug transaction during the NOPD's surveillance operation. *Id.*

In fact, the Government argues that information omitted from the affidavit supports, rather than negates, a finding of probable cause. *Id.* at 10-11. As mentioned previously, the Government attached a police report detailing the surveillance of the 1201 Belleville Street residence. (R. Doc. 46-1.) The police report provides that Mr. Ricks exited the 1201 Belleville Street residence, conducted a hand-to-hand transaction, and went back into the residence. *Id.* at 3. Thus, the Government argues that this omitted information, in conjunction with the Crimestoppers tip which stated that there was suspected drug trafficking activity at 1201 Belleville Street, traffic in and out of the residence with the individuals only staying 10 minutes at a time, and that this occurred all day long, that a clear nexus between the drug

trafficking activity and the house existed. (R. Doc. 46 at 12.) Therefore, the Government argues that "there is no basis, much less a 'substantial preliminary showing,' to conclude that the officers omitted information from the tip in order to deceive the magistrate." *Id.*

The Court finds that Defendant has not sustained his burden of proving that false information was given intentionally or recklessly. Even if the omitted information referenced above was included in the warrant affidavit, there would have been probable cause to believe that Mr. Ricks was engaging in illegal behavior from his residence at 1201 Belleville. Further, if all of the information that was omitted from the affidavit had been included, particularly that Mr. Ricks was seen entering and exiting the 1201 Belleville residence before and after hand-to-hand transaction, Defendant would have no argument that a sufficient nexus to the interior of 1201 Belleville Street existed. Accordingly, because Defendant has failed to present any evidence that the officers recklessly or intentionally omitted information from the warrant affidavit, this exception to the *Leon* good faith exception is inapplicable.

In conclusion, the Court finds that the *Leon* good faith exception applies to the search of the residence located at 1201 Belleville Street, New Orleans, Louisiana. Because the good faith exception applies, the Court need not address whether the affidavit

established probable cause. *See Moore*, 805 F.3d at 594 (citing *Aguirre*, 664 F.3d at 613-14). Accordingly, the evidence seized from the residence at 1201 Belleville Street shall not be suppressed. Further, because the search of the 1201 Belleville residence was lawful, the Court finds that the subsequent searches, pursuant to individual search warrants, of the cell phones seized at the residence are not tainted and such evidence shall not be suppressed.

## II.   The Search of the Red Dodge Challenger and the Maroon Jeep Cherokee

Defendant also seeks to suppress any evidence found pursuant to the search warrants issued for the red Dodge Challenger and maroon Jeep Cherokee. (R. Doc. 42-1 at 13.) Defendant argues that "[n]either the warrant application for the Dodge Challenger nor for the Jeep Cherokee contained a supporting affidavit, whether by a recitation of facts in the applications themselves or by incorporation of or reference to the affidavit supporting the application for 1201 Belleville." *Id.* However, Defendant has not pointed to any evidence he seeks to exclude from the vehicles that was found pursuant to the search warrants. In fact, both parties appear to agree that no evidence was seized from the vehicles pursuant to the search warrants. (R. Doc. 42-1 at 14; R. Doc. 46

at 6 n.4.) Accordingly, Defendant's request shall is denied as moot.

Further, while the Government does not oppose Defendant's argument, the Government has reserved all rights to use evidence seized from the Challenger after Mr. Ricks allegedly advised agents post-arrest that certain documents pertaining to the ownership of the car were inside the vehicle. (R. Doc. 46 at 6 n.4.) This issue is not currently before the Court. Therefore, the Court makes no determination as to the admissibility of any evidence recovered from these vehicles by any other means.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's *Motion to Suppress* **(Rec. Doc. 14)** is **DENIED**.

New Orleans, Louisiana this 5th day of December, 2016.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE